LOUIS F. RAYMOND, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. JOHN S. CREGAR, DEFENDANT, CROSS-APPELLANT AND BENJAMIN P. DeWITT, RICHARD B. EVANS, PHILIP H. CONDIT, THOMAS C. RICHARDS, ELWOOD M. HILL, JAMES A. MacART, CALVIN A. AGAR, JR., LESLIE L. BLAU, JOHN P. COFFIN, JOHN R. DESIDERIO, FERDINAND C. DINGE, HERBERT S. GAY, JR., MERVIN H. GOLDSMITH, LEROY M. GRIGGS, CHARLES A. HEISS, JOHN E. JUDSON, JAMES L. MacWITHEY, WILLIAM M. McCONNEL, AUGUST MERZ, ANTHONY P. MIELE, MRS. ARTHUR G. PILCH, ARTHUR T. PRESCOTT, MRS. MARGERY E. RAAB, LESLIE C. RICKETTS, M. RAYMOND RILEY, ROBERT F. ROH, M.D., GORDON V. STODDARD, M.D., THOMAS W. SWEENEY, HARRY A. TAYLOR, ADELBERT B. TWITCHELL, M.D., GUSTAVE E. WIEDENMAYER, EDWARD H. WILLAN, M.D., MRS. ROY V. WRIGHT, WILLIAM G. WRIGHTSON, JR. AND THE EAST ORANGE GENERAL HOSPITAL, A CORPORATION OF N. J., DEFENDANTS-RESPONDENTS.

Argued October 10, 1962—Decided November 19, 1962.

*Mr. Thomas L. Parsonnet* argued the cause for the plaintiff-appellant and cross-respondent (*Mr. George Duggan,* attorney).

*Mr. Everett M. Scherer* argued the cause for the defendants-respondents and cross-appellant, John S. Cregar (*Mr. Louis Ogust,* attorney for all defendants-respondents except Richard B. Evans, and for John S. Cregar; *Messrs. Riker, Danzig, Marsh & Scherer,* attorneys for Richard B. Evans; *Mr. Everett M. Scherer,* on the brief).

The opinion of the court was delivered by

PROCTOR, J. This action was brought by the plaintiff, a physician, against East Orange General Hospital (Hospital), a private, nonprofit corporation; against its Board of Trustees individually; and against three other persons, Benjamin P. DeWitt, Richard B. Evans, and Dr. John S. Cregar, who are associated with the Hospital. The plaintiff, who specializes in ophthalmology, had been appointed a member of the Medical Staff of the Hospital in 1952, and was reappointed each year until 1958. His action stems from the fact that he failed of reappointment to the staff for the year 1958. Such failure, he charges, was due to the malicious interference by individual defendants and to the breach of the reappointment provisions of the Hospital's bylaws.

The first and third counts of the plaintiff's amended five-count complaint were abandoned by him on the appeal to the Appellate Division, and need not be considered here.

In the second count the plaintiff sought compensatory and punitive damages, charging that the defendants, DeWitt, Evans and Cregar, individually as well as part of a conspiracy, acted maliciously to "interfere with and obstruct the orderly and customary promotions of plaintiff" while he was a member of the Medical Staff, and that they circulated "false, tortious and malicious rumors, untruths and defamatory statements" which caused "plaintiff's appointment to the * * * Medical Staff to be revoked and defendants did prevent plaintiff's reappointment to aforesaid Medical Staff" for the year 1958, and that they "interfered with plaintiff's surgical privileges at the * * * Hospital * * * all for the malicious purpose of ruining plaintiff and interfering with the plaintiff in his profession."

In the fourth count the plaintiff sought compensatory damages against the members of the Hospital's Board of Trustees, alleging that they were individually responsible for the Hospital's alleged violation of its bylaw governing the reappointment of members of the Medical Staff. In the fifth count plaintiff sought compensatory damages against the defendant Hospital based upon its alleged violation of the same bylaw provisions.

All defendants moved for summary judgment based upon the pleadings, affidavits, depositions and answers to interrogatories. The motion was granted by the trial court and a judgment dismissing the amended complaint was entered. On the plaintiff's appeal, the Appellate Division affirmed the judgment of the trial court as to all defendants except Cregar, and to the extent that the allegations of the second count relate to him, the case was reversed and remanded for trial. 72 N. J. Super. 73 (1962).

The plaintiff petitioned this court for certification as to that part of the judgment of the Appellate Division which affirmed the trial court, and the defendant Cregar petitioned for certification as to that part of the judgment which reversed the trial court and directed that he stand trial on the

second count. We granted both petitions. 37 *N. J.* 225 (1962).

■ The basis of the fourth and fifth counts of the amended complaint is the alleged breach of Article III, section 3 of the Hospital bylaws which, it is contended, resulted in the plaintiff's failure of reappointment.[1] This bylaw provides:

"Appointment to the Medical Staff shall be made by the Board of Trustees and shall be for a period of one year or until the next succeeding annual meeting of the Board of Trustees, whichever is earlier. The Board of Trustees at its annual meeting in each year may make reappointments to the Medical Staff for a further period of one year or until the next succeeding annual meeting of the Board of Trustees, whichever is earlier, *except in cases where the Medical Board, constituted as hereinafter provided, has recommended that reappointments shall not be made.* If the Board of Trustees decides not to reappoint any member, whether or not recommended by the Medical Board, the Board of Trustees shall so advise the Medical Board.

In no case shall the Board of Trustees appoint a recommended[2] applicant, cancel an appointment previously made or *refuse to renew an appointment without conferring with the Medical Board.*" (Emphasis added.)

The plaintiff contends that this provision was breached by the individual trustees, and by the Hospital, in that the Board of Trustees failed to have the required conference with the Medical Board prior to their decision to "refuse to renew" his appointment. Admittedly no such conference was held. However, we can find little to add but our agreement to the

[1] Plaintiff predicates his claim for damages on these counts solely on the contractual effect of the bylaws and does not raise the question whether notwithstanding the bylaws he is entitled to continue on the Medical Staff unless he was not reappointed for good cause shown at a hearing. That question is not before us. Also, the question whether plaintiff's remedy should be confined to reinstatement rather than damages has not been briefed by any of the parties and therefore we make no determination thereon.

[2] The word "recommended" seems inappropriate in this context. At oral argument it was suggested that the word refers to a situation where the applicant is recommended by a source other than the Medical Board. However, there is no need to construe this word as its meaning is not involved in the issue before us.

well-reasoned conclusion of the Appellate Division that the Board of Trustees has no duty to confer with the Medical Board with respect to reappointments except where the Medical Board has recommended that an appointment be renewed and the Board of Trustees wishes to "refuse to renew" the appointment despite the favorable recommendation.[2] In the present case it is undisputed that, each year, it is the practice of the Medical Board, after consideration of the qualifications of each candidate for reappointment, to submit to the Board of Trustees a list of names of all candidates whom it wishes to have reappointed. The failure of the Medical Board to include on this list the name of any particular candidate amounts, therefore, to a recommendation that such candidate's reappointment not be made by the Board of Trustees. It is also undisputed that the Medical Board did not recommend the plaintiff's reappointment for 1958. Although the plaintiff argues that the Board of Trustees must confer with the Medical Board before failing to renew *any* appointment, even where the Medical Board has not recommended the renewal of that appointment, a careful examination of the bylaw demonstrates the unsoundness of this position. In the first-quoted paragraph, the Board of Trustees is given unrestricted power to make an "appointment" for one year or until its next meeting, whichever is earlier. But the power to make "reappointments" to the Medical Staff is limited by the clause "except in cases where the Medical Board * * * has recommended that reappointments shall not be made." Nowhere in this bylaw, or in any other bylaw contained in the record, is the Board of Trustees given any power to override an unfavorable recommendation by the Medical Board. The Board of Trustees may refuse to reappoint notwithstanding a favorable recommendation by the Medical Board, but it may not make a reappointment in the face of an adverse recommendation. It is clear that since the Medical Board, in practical effect, recommended that the plaintiff not be reap-

---

[2] See note 2 on page 476.

pointed to the Staff, the Board of Trustees had no power to make the reappointment and any requirement of a conference would be a meaningless gesture. Therefore, we hold that the Appellate Division correctly affirmed the dismissal of the fourth and fifth counts of the amended complaint.

We are also satisfied that the Appellate Division made a proper disposition of the plaintiff's appeal with respect to the defendant DeWitt.

With respect to the cross-appeal of the defendant Cregar, we have made a thorough examination of the record and agree with the Appellate Division that there is sufficient evidence of malicious interference with the plaintiff's status in the Hospital on the part of this defendant to raise factual questions requiring explanation and resolution at a plenary trial on the second count.

As to all of the issues discussed so far, we affirm the judgment of the Appellate Division for the reasons stated in its opinion.

■ Contrary to the Appellate Division's disposition of the case in favor of the defendant Evans, we find that there was sufficient evidence of malicious interference by him individually with the plaintiff's status to warrant the further inquiry of a plenary trial on the allegations of the second count. However, there is nothing in the record to warrant a trial on the plaintiff's charge that Evans conspired with any other person.

The defendant Evans was Vice-President of the Board of Trustees of the Hospital and Chairman of the Joint Conference Committee, which is a liaison committee between the Board of Trustees and the Medical Board, and is composed of five members of each of the two Boards. In May of 1957, the plaintiff sent Evans a bill for medical services he rendered to Evans' mother. Evans considered this bill to be excessive, and there is evidence that a member of the Medical Board and a member of the Board of Trustees were told by Evans about his complaint of being overcharged, although Evans himself denied that he told anyone connected with the

Hospital about it. There is also testimony that the plaintiff asked Dr. Stoddard, a member of the Medical Board and Board of Trustees in 1957, to "find out what they have against me over there" at the Hospital, and that upon making such inquiry, Dr. Stoddard was told by a member of the Board of Trustees that "Dr. Raymond had overcharged a relative of Mr. Evans."

The affidavits and depositions show that there was a meeting of the Joint Conference Committee on July 9, 1957. Dr. Alfred Meurlin, President of the Medical Board and a member of the Joint Conference Committee, testified in deposition that the committee discussed the question of the reappointment of the plaintiff at this meeting. Dr. A. L. Cantelmo, who was also a member of the committee, testified in deposition that he was present at this meeting and that the defendant Evans presided. He testified that Evans stepped down from the chair and said to the members that "his mother had gone to Dr. Raymond for treatment, and Dr. Raymond had decided surgery was necessary. She subsequently went to another doctor, and the other doctor said surgery wasn't necessary." However, not only does the plaintiff deny ever recommending surgery for Evans' mother, but Evans himself admitted that he did not recall that the plaintiff ever made such a recommendation. Evans testified in deposition as follows:

"Q. Did you have any discussion whatsoever with Dr. Raymond concerning an operation on your mother's eyes?

A. Oh, yes. During the examination the question came up of cataracts. This discussion wasn't new to me. Every examination she'd go through, then and since, that question has come up as to whether perhaps surgical treatment would improve her vision. I forgot just what Dr. Raymond said, but I assumed he said about the same thing every other ophthalmologist has—that is, that surgery would not improve the situation. I don't recall exactly what he said at that time.

Q. In other words, you have no recollection of Dr. Raymond advising an operation on your mother's eyes? A. No."

■■ For the plaintiff to succeed on the second count he must show: (1) actual interference by the defendant Evans;

and (2) the malicious nature of such interference. *Louis Schlesinger Co. v. Rice*, 4 *N. J.* 169, 181 (1950); *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 *N. J.* 552, 563 (1955); *Sokolay v. Edlin*, 65 *N. J. Super.* 112, 128 (*App. Div.* 1961). Malicious interference is the intentional doing of a wrongful act without justification or excuse. *Louis Schlesinger Co. v. Rice, supra*, 4 *N. J.*, at *page* 181; *Kurtz v. Oremland*, 33 *N. J. Super.* 443, 455 (*Ch. Div.*), affirmed 16 *N. J.* 454 (1954).

The defendant contends that his actions cannot be deemed to have caused injury to the plaintiff in his profession, and further there is no proof that the defendant intended to injure him or prevent his reappointment. Moreover, the defendant urges he "was protected by the qualified privilege rule, since he was a party communicating information in which he had an interest to parties having a corresponding interest or duty," and "[u]nder such circumstances his actions are not actionable, in the absence of proof of malice, which does not exist."

From the evidence discussed above concerning Evans' actions, inferences may be drawn that Evans was annoyed at the plaintiff for sending him a medical bill which he considered excessive; and that he made statements concerning the plaintiff's ability and integrity as a physician to the Joint Conference Committee, at which the plaintiff's qualifications for reappointment were being discussed. In the context of these circumstances, a further inference may be drawn that Evans' statement was intended by him to influence, and for the purposes of this motion for summary judgment, that it did influence the members of that committee, and in turn the Medical Board and the Board of Trustees, to refuse plaintiff's reappointment to the Medical Staff for 1958. Defendant Evans contends that the most that can be said for his alleged statement at the July 9, 1957 meeting is "that it was a disagreement between two doctors as to a course of treatment"; that it is "common knowledge" that this is a daily occurrence which "does not reflect adversely on the

doctor who recommends the operation simply because some other physician believes that another course of treatment will accomplish the desired result." It may be that a jury would find that the alleged statement should be given such an innocuous connotation. But, it cannot be said as a matter of law that in the light of the above circumstances the jury must reach such conclusion. *Cf. Shor v. Billingsley*, 4 *Misc. 2d* 857, 158 *N. Y. S. 2d* 476 (*Sup. Ct.* 1957), *affirmed* 4 *A. D. 2d* 1017, 169 *N. Y. S. 2d* 416 (*App. Div.* 1957), motion for leave to appeal denied, 5 *A. D. 2d* 768, 170 *N. Y. S. 2d* 976 (*App. Div.* 1958).

██ It is undisputed that Evans, in the performance of his duties as a trustee of the Hospital and as a member of the Joint Conference Committee, had a qualified privilege to make statements concerning the plaintiff's qualifications for reappointment. As said in *King v. Patterson*, 49 *N. J. L.* 417, 422 (*E. & A.* 1887):

"A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty * * *."

Persons who serve on the governing boards of institutions, which boards have the obligation to pass upon the qualifications of the personnel, should have the widest latitude in discussing the qualifications of candidates for staff appointments, so long as they act in good faith. Statements made in such discussions are qualifiedly privileged. But the qualified privilege is lost if the statements are made with "malice." Malice in this sense may be described as an improper purpose, *i. e.*, a purpose other than furthering the public interest which is legally protected by the qualified privilege. See 1 *Harper & James, Law of Torts*, § 5.27, *p.* 542 (1956). "The 'fundamental test is the *bona fides* of the communication.'" *Coleman v. Newark Morning Ledger Co.*, 29 *N. J.* 357, 375 (1959).

■ We think the plaintiff has sustained his allegations of malice against Evans with evidence sufficient to withstand the motion for summary judgment. The plaintiff's proofs (which, of course, at this posture of the case, we must accept as true together with all inferences favorable to the plaintiff) show that Evans made statements which he knew to be false and which reflected upon the plaintiff's professional ability and integrity. Such statements are not protected by the qualified privilege. As said by Dean Prosser: "[S]ince there is no social advantage in the publication of a deliberate lie, the privilege is lost if the defendant does not believe what he says." *Prosser, Torts*, § 95, *p.* 628 (*2d ed.* 1955). Therefore, whenever a plaintiff has the burden of showing malice or ill motive on the part of a defendant in his statements concerning the plaintiff, it is enough that the plaintiff show that the defendant knew his statements to be false at the time that he made them. As was said by Chief Justice Gummere in *Lawless v. Muller*, 99 *N. J. L.* 9, 11 (*Sup. Ct.* 1923):

"[I]t goes without saying that, if a man deliberately makes a false statement concerning another, with full knowledge of its untruthfullness at the time he makes it, the conclusion is almost irresistible that he was impelled to do so by a malicious motive."

See also, *Coleman v. Newark Morning Ledger Co., supra.* 29 *N. J.*, at *pages* 375–376. In writing about the abuse of a qualified privilege, *Harper & James, supra,* at *page* 453, says: "Of course, if a person making such a [defamatory] statement knows, at the time, that he is lying, no further evidence of malice is necessary." Also bearing on the question of malice or ill motive is Evans' denial, in the face of evidence to the contrary, that he ever discussed his complaint about the excessiveness of the plaintiff's medical bill with anyone connected with the Hospital.

One further point should be mentioned with respect to the meeting of the Joint Conference Committee on July 9, 1957. The minutes of this meeting, which could be expected to shed light upon the statements of Evans and the circumstances

under which they were made, were not available to the plaintiff, although the minutes of all other committee and board meetings were available. Evans testified that minutes were taken at all meetings of the Joint Conference committee. Moreover, the minutes of the following meeting of this Committee, in November 1957, state that the minutes of the July meeting had been distributed among the members and were approved. Notwithstanding this, however, the Hospital stated in an answer to an interrogatory that no record was made of the July 9, 1957 Joint Conference Committee meeting. In light of the above circumstances, and particularly since Evans was Vice-President of the Board of Trustees of the Hospital, and Chairman of the Joint Conference Committee, we think there should be a full opportunity to explore that matter.

The judgment of the Appellate Division is affirmed except that part which was entered in favor of the defendant Evans, individually, on the allegations of the second count of the amended complaint. As to Evans individually on that count, the judgment is reversed and the case is remanded to the Law Division for trial.

*For affirmance in part and reversal in part*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.