**Chester LABUS, Plaintiff,**

v.

**NAVISTAR INTERNATIONAL TRANS-PORTATION CORP.; James T. O'Dare; and John Doe (a fictitious name), jointly, severally and/or in the alternative, Defendants.**

**Civ. A. No. 88–2545(SSB).**

United States District Court, D. New Jersey.

April 6, 1990.

Arnold H. Feldman, Ballen, Keiser, Gertel, Feldman & Agree, Camden, N.J., for plaintiff.

Ezra D. Rosenberg, Katzenbach, Gildea & Rudner, Lawrenceville, N.J., for defendants.

## OPINION

BROTMAN, District Judge.

Currently before the court is the motion of defendants for summary judgment. For the reasons stated herein, this motion will be granted in part and denied in part.

## I. FACTS AND PROCEDURE

Plaintiff was employed by defendant Navistar International Transportation Corporation ("Navistar") from November 3, 1952 to June 30, 1986. He moved through a series of positions, from Retail Salesman, Zone Manager, Branch Manager, to Fleet Account Executive. Plaintiff contends that, starting in 1983 and continuing through 1986, Navistar pursued a course of action to reduce plaintiff's accounts from twenty to four accounts, apparently by converting his sales accounts to dealer accounts.

In 1982, plaintiff's major account, Pensky Leasing, had been removed from his account list despite his highly successful record with the account and given to a Fleet Account Executive in New York City. In 1983, Navistar appointed defendant James T. O'Dare to Regional Fleet Sales Manager. According to plaintiff, O'Dare's appointment set into motion the reduction of his accounts from approximately twenty to nine. Despite his requests to his immediate supervisor, Charles Burke, plaintiff was not permitted to expand his client list. Plaintiff requested reassignment to the Hertz–Penske account because the client was relocating to Reading, Pennsylvania, where plaintiff resided. O'Dare denied his request and assigned the account to a New York salesman.

Plaintiff alleges that he was denied salary increases while all younger Fleet Account Executives received such increases in late 1984 and early 1985. Plaintiff again requested assignment of additional accounts in December 1985, however, his account list was further reduced from nine to four. When a senior Fleet Account Executive retired in January 1986, his accounts were divided among younger account executives—none of the accounts was given to plaintiff. Plaintiff claims that such actions resulted in negative evaluations of his performance that were, in fact, a pretext for impermissible consideration of age.

On January 3, 1986, Navistar's Vice President of the Eastern Region, Leo Schofield, told plaintiff that he was terminating plaintiff effective in March 1986, but he allegedly agreed to look for other positions within the company for plaintiff. Plaintiff continued in employment with Navistar until June 1986. Plaintiff maintains that he was treated as a continuing employee with duties and responsibilities commensurate with the activity of all other account executives. In fact, in April 1986, plaintiff travelled to Florida at Navistar's expense with the stated purpose to search out reassignment within the company.

Plaintiff brought this age discrimination suit on June 16, 1988 under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 626(b), (c) and the New Jersey Law Against Discrimination ("NJLAD"), N.J.Stat.Ann. § 10:5–12(a) et seq. Plaintiff has also asserted claims for tortious breach of an implied contract, intentional interference with prospective eco-

nomic advantage, promissory estoppel, and misrepresentation.

Defendants' motion for summary judgment maintains that plaintiff's claim is not timely under the ADEA, which provides that no action may be commenced until sixty days after a charge has been filed with the Equal Employment Opportunity Commission ("EEOC"). Defendants maintain that a claim must be filed with the EEOC within 300 days after the alleged unlawful practice occurred. Plaintiff filed his complaint with the EEOC 335 days after his January 3, 1986 notice of termination. Defendants argue that because the incidents described in the complaint occurred on or prior to January 3, 1986, claims of discrimination based on these incidents must be dismissed.

Plaintiff maintains that defendants' actions were continuing acts of age discrimination and, therefore, constitute a policy of discrimination that continued until plaintiff left Navistar in June 1986. Plaintiff also suggests that the actual date of termination was not when Navistar orally told plaintiff he was terminated on January 3, 1986, but when plaintiff left Navistar in June 1986. Plaintiff also maintains that the EEOC's denial of defendants' demand for dismissal must be given presumptive weight that plaintiff timely filed. Plaintiff maintains that Navistar affirmatively led plaintiff to believe that he would be receiving another job within the organization, and thus the deadline should be equitably tolled.

Defendants contend that an action based on allegedly defamatory statements made on May 1, 1984, December 5, 1985, and throughout 1983 is barred by New Jersey's one year statute of limitations. Plaintiff filed his complaint in this court on June 16, 1988. At oral argument, counsel for plaintiff stated that plaintiff did not concede that this claim is barred.

Defendants argue that plaintiff abandoned his claims for emotional distress and physical injury, citing to deposition testimony that was not attached as an appendix to the motion. Plaintiff conceded these claims at oral argument. Defendants also maintain that plaintiff's claims based upon an implied contract or representations about defendants' termination policy are not actionable under New Jersey law. Defendants also argue that, under New Jersey law, courts have not invoked the implied covenant of good faith and fair dealing to restrict the authority of employers to fire at-will employees. Additionally, defendants maintain that any claim of misrepresentation is subsumed under this implied contract claim under New Jersey law. Plaintiff maintains that whether Navistar's policies, written or otherwise, apply to plaintiff and, therefore, create an implied promise is a question of fact that is inappropriate for summary judgment.

Defendants also maintain that plaintiff has not alleged malice as required for claims of malicious interference with contractual rights and prospective economic advantage. Plaintiffs argue that malice, or the motive of the defendants, is a question of fact that precludes summary judgment.

Defendants argue that plaintiff's claim of promissory estoppel with respect to defendants' denial of pension benefits to plaintiff is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Further, defendants argue that plaintiff fails to state a claim under ERISA. Plaintiff maintains that his charge of discrimination does not require that the court interpret the provisions of the employee benefit plan and, therefore, is not preempted by ERISA.

Finally, defendants maintain that, if plaintiff's ADEA claims are dismissed, this court cannot maintain jurisdiction over plaintiff's state law claims. Defendants also point out that, because plaintiff is a Pennsylvania resident, matters of comity suggest that this court should refuse to entertain plaintiff's pendant claims even if the ADEA claims are not dismissed. In the alternative, defendants note that if plaintiff's claims are not dismissed, plaintiff has still not complied with the requirements of the ADEA, 29 U.S.C. § 633(b), which requires that plaintiff first bring suit under the NJLAD in the New Jersey Division of Civil Rights.

## II. DISCUSSION

### A. *The Summary Judgment Standard*

■ The standard for granting summary judgment is a stringent one, but it is not insurmountable. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, even if the movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. *Timeliness of Plaintiff's ADEA Claim*

Plaintiff filed his complaint with the EEOC 335 days after his January 3, 1986 notice of termination. Defendants argue that because the incidents described in the complaint occurred on or prior to January 3, 1986, claims of discrimination based on these incidents must be dismissed. *See* 29 U.S.C. § 626(d)(2) (claim must be filed within 300 days after the alleged unlawful practice occurred or within 30 days of plaintiff's notice of termination of state law proceedings, whichever earlier). Plaintiff maintains that defendants' actions were continuing acts of age discrimination that constitute a policy of discrimination that continued until plaintiff left Navistar in June 1986. In the alternative, plaintiff maintains that Navistar affirmatively led plaintiff to believe that he would be receiving another job within the organization, thus, the deadline should be equitably tolled.

■ The Court of Appeals for the Third Circuit permits this court to equitably toll the filing deadline for ADEA claims. *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 309 (3d Cir.1983). In *Meyer*, the Third Circuit held that summary judgment on the issue of equitable tolling was inappropriate where the defendant-employer misrepresented the reasons for the employee's dismissal. *Id.* The court noted that the 300 day limitation under the ADEA was not jurisdictional, but acted as a statute of limitations. *Id.* at 306–07. The important humanitarian purposes of the ADEA led the court to believe that the limitation was subject to tolling or estoppel in appropriate cases. *Id.* Finding that the employer distorted the ground for plaintiff's dismissal so that the merits of a potential claim remained obscure for a considerable length of time, the court held that genuine issues of material fact existed, thus, a determination of the equitable tolling claim by summary judgment was premature. *Id.* at 309.

Viewing the facts in the light most favorable to the nonmoving party, as this court

must on a motion for summary judgment, *see Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972), plaintiff has asserted facts to preclude summary judgment on the timeliness claim for his termination of employment. Schofield's January 3, 1986 representation that he would look for another position for plaintiff could have lulled plaintiff into deferring the filing of his complaint. Plaintiff's affidavit sets forth that he travelled to Florida at company expense for the purpose of reassignment. Defendants' actions, therefore, may have lulled plaintiff into sitting on his rights. Defendants' motion for summary judgment with respect to this claim will be denied.

█ Additionally, defendants' motion for summary judgment with respect to plaintiff's claims of discrimination from the reassignment of his accounts and assignment of accounts to younger executives will be denied. Although these incidents occurred more than 300 days before plaintiff filed his complaint, plaintiff has pleaded that the individual discriminatory incidents were part of a discriminatory scheme to hamper his job performance, thereby constituting a "continuing violation" of his rights. Plaintiff maintains that Navistar pursued a course of action to reduce the number of his accounts and that the erosion of plaintiff's accounts culminated in his termination from employment in 1986.

In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the United States Supreme Court held that a plaintiff could not rely on the theory of continuing violations to advance claims about isolated incidents of discrimination concluded in the past even though their effects persisted into the present. In *Ricks*, plaintiff filed his complaint under Title VII of the Civil Rights Act of 1964 more than 180 days after the school notified him on June 26, 1974 that it would offer plaintiff a one year "terminal" contract that would expire on June 30, 1975 as a result of his denial of tenure. Plaintiff

filed his employment discrimination charge with the EEOC on April 4, 1975. The Court noted that mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. *Id.* at 257, 101 S.Ct. at 503–04. Finding that the eventual loss of a teaching position was one of the effects of the discriminatory denial of tenure, and not a discriminatory act itself, the Court concluded that plaintiff's claim of employment discrimination was time-barred. *See also Hood v. New Jersey Department of Civil Service*, 680 F.2d 955 (3d Cir.1982) (no continuing violation under Title VII where eligibility roster for employment or promotion of police officers drafted more than 180 days before claim filed even though roster remained in effect at time of filing); *Bronze Shields, Inc. v. New Jersey Department of Civil Service*, 667 F.2d 1074 (3d Cir.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982) (no continuing violation under Title VII where eligibility roster for promotion of fire fighters drafted more than 180 days before claim filed).

The Court of Appeals for the Third Circuit applied the continuing violations theory for an ADEA claim in *EEOC v. Westinghouse*, 725 F.2d 211 (3d Cir.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). In *Westinghouse*, the court held that each denial of Layoff Income and Benefits ("LIB") to 65 employees constituted a specific discriminatory act which was part of Westinghouse's alleged continuing policy to discriminate on the basis of age, thus, summary judgment on the issue of timeliness was inappropriate. The plant at which plaintiffs worked closed on April 1, 1977. Westinghouse had "counseled" the affected employees between January 12, 1977 and March 17, 1977 that they were ineligible for LIB benefits. The original complaint in the action was filed March 28, 1980.[1] The *Westinghouse* court distinguished *Ricks* because the case did not involve a discrete, isolated act such as the denial of tenure to one professor. Like-

---

1. The court considered whether the three year limitation for a willful violation of the ADEA applied. *See* 29 U.S.C. § 216(c).

wise, the court distinguished *Bronze Shields* and *Hood* because, unlike these earlier precedents, the *Westinghouse* plaintiffs alleged specific instances of discrimination rather than merely the continued use of a discriminatory policy. *Id.* at 219.

This court finds that plaintiff has shown sufficient facts to show a continuing violation of his rights between 1983 and 1986. Unlike *Ricks*, the alleged discriminatory policy initiated by Navistar in 1983 was not a discrete act of discrimination that was "concluded in past;" rather, it continued from 1983 until his termination in June 1986. *Bronze Shields* and *Hood* are distinguishable because, there, the alleged discriminatory policy was isolated to a specific act, that is, the drafting of the hiring/promotion roster. Plaintiffs there did not allege that each independent hiring or promotion was a discriminatory act necessary to establish a discriminatory policy; rather, the policy was discriminatory *ab initio*.

Because Navistar meted out the alleged discriminatory policy over the course of several years, plaintiff could not have had notice that the policy, at its inception, was discriminatory. The court must determine when plaintiff reasonably should have known that Navistar's actions were pursuant to a discriminatory policy. This question is inappropriate for summary judgment. The court will, therefore, deny defendants' motion for summary judgment on plaintiff's claims that Navistar discriminated against him by reassigning his accounts and assignment of accounts to younger executives.

In light of the foregoing, the court will not consider plaintiff's claim that the EEOC's denial of dismissal gives presumptive weight that plaintiff timely filed.

### C. *Defamation*

Defendants contend that an action based on allegedly defamatory statements made on May 1, 1984, December 5, 1985, and throughout 1983 is barred by New Jersey's one year statute of limitations. *See* N.J. Stat.Ann. § 2A:14–3 (1987). Plaintiff filed his complaint in this court on June 16, 1988. Plaintiff refused to concede these claims at oral argument, but did not put forth any argument why the claims were not barred by the statute of limitations. This court will dismiss the claims as barred by the statute of limitations.

### D. *Emotional Distress and Physical Injury*

Defendants maintain that plaintiff abandoned his claims for emotional distress and physical injury. Plaintiff conceded these claims at oral argument. The court will dismiss them.

### E. *Implied Contract*

Defendants maintain that plaintiff's claims based upon an implied contract or representations about defendants' termination policy are not actionable under New Jersey law. Plaintiff maintains that whether Navistar's policies, written or otherwise, apply to plaintiff and therefore create an implied promise is a question of fact that is inappropriate for summary judgment. The parties also dispute whether plaintiff was entitled to rely on Navistar's Human Resources Policy Manual as the basis for an implied contract.

■ Company policies may provide an implied promise that an employee could not be fired unless the employer followed the various procedures outlined in the company's personnel policy manual, absent a clear and prominent disclaimer. *See Woolley v. Hoffmann–LaRoche*, 99 N.J. 284, 303 n. 9, 491 A.2d 1257 (1985). In *Woolley*, the Supreme Court of New Jersey held that termination clauses contained in personnel manuals could be found to be contractually enforceable. *Id.* at 297, 491 A.2d 1257. Specifically, the court held that absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee would only be fired for just cause was enforceable, despite the fact that employees otherwise were terminable at will. According to the court, "when an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment ... the judiciary ... should construe them in accordance with the reasonable expectations

of the employees." *Id.* at 297–98, 491 A.2d 1257. The court stated, however, that when determining whether a manual is enforceable, courts must look to the manual's meaning and effect. *Id.* at 298, 491 A.2d 1257.

Crucial factors in such determinations include the context in which the manual was disseminated and the environment surrounding its continued existence. *Id.* In *Woolley*, the manual was distributed to the general work force who were, thus, aware of its contents. The court concluded that when the employee was "given [the manual] that purports to set forth the terms and conditions of his employment," it was almost inevitable that he or she would "regard it as a binding commitment, legally enforceable, concerning the terms and conditions of his employment." *Id.* at 299, 491 A.2d 1257. The court found that, through the manual, the employer made a commitment to give workers protection against arbitrary termination. *Id.* at 300, 491 A.2d 1257. According to the court, substantial injustice would be done if the employer was permitted to break a purported promise to provide job security. *Id.* at 297, 491 A.2d 1257. The court maintained, however, that policies embodied in a personnel manual do not automatically become legally binding terms and conditions. If the manual clearly states that the employer makes no promises and continues to have absolute power to fire any employee without good cause, its provisions will not be enforced.

In *Ware v. Prudential Insurance Co.*, 220 N.J.Super. 135, 147, 531 A.2d 757 (1987), the Appellate Division held that a management employee did not have a reasonable expectation that the policies set forth in a policy manual conferred employee benefits where he had an individual written employment contract that expressly stated that his employment was at will and where the documents distributed to him by management to guide his supervision of lower level employees were silent with respect to his own employment rights. In *Ware*, plaintiff's employment contract specifically provided for termination at will by either party. *Id.* at 138, 531 A.2d 757. In addition, the contract stated that the company would not be bound by any alteration of the terms and conditions of the agreement and that the contract superceded any previous agreement. *Id.* Plaintiff, a district manager, claimed that he was assured by higher level management employees that the signing of an employment agreement was a mere formality and that his basic relationship with defendant was governed by its personnel manual. The defendant, on the other hand, testified that the manual was not intended for the use of district managers, but was intended instead for certain Vice Presidents. The court applied the reasoning in *Woolley* and concluded that plaintiff and other employees could not have had a reasonable expectation that the manual was intended to confer employee benefits. *Id.* at 144, 531 A.2d 757. The court explained that such expectations were not reasonable because the manual had very limited distribution. Copies were sent only to high level executives and administrative assistants. No copy was sent to plaintiff or any other employee at his level. In addition, the court noted that there was no organized program to disseminate the contents of the document to employees other than those to whom it was sent. *Id.* at 144–45, 531 A.2d 757.

Although defendants here assert that the limited distribution of Navistar's manual compels a finding that no implied contract existed, the instant case differs from *Ware* in several significant respects. In *Ware*, the employee-plaintiff had an individual written employment contract that established that he was an at will employee. *Id.* at 138, 531 A.2d 757. The *Ware* contract also stated that the company would not be bound by any alteration of the terms and conditions of the agreement and that the contract superceded any previous agreement. *Id.* Here, plaintiff had no employment contract. In the absence of a written contract covering his employment, plaintiff may have had a reasonable expectation that Navistar's employee policy manuals created enforceable contract rights. Nonetheless, this court concludes that plaintiff is not entitled to rely on the manual here.

Defendant asserts that, because plaintiff testified in depositions that he first read Navistar's Human Resources Policy Manual for the first time in 1989, plaintiff may not rely on the manual to show an implied promise of employment existed. This court agrees.

The *Woolley* court found that a presumption of reliance arises and the manual's provisions become binding at the moment the manual is distributed to the general work force. 99 N.J. at 304 n. 10, 491 A.2d 1257. The court noted that, if reliance were not presumed, a strict contractual analysis, requiring bargained-for detriment, would protect the rights of some employees but not others. *Id.* Following *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), the court agreed that employees neither had to read the manual, know of its existence, or rely on it to benefit from its provisions any more than employees in a plant that is unionized have to read or rely on a collective bargaining agreement to obtain its benefits. 99 N.J. at 304 n. 10, 491 A.2d 1257.

*Woolley* is clearly distinguishable from the case at bar. Plaintiff does not allege that the manual was distributed to the work force, rather it appears it was distributed only to certain upper level employees. Plaintiff could not reasonably rely on a manual that he had never seen. *House v. Carter–Wallace, Inc.,* 232 N.J.Super. 42, 55, 556 A.2d 353 (App.Div.1989) (employee can not have reasonable expectation of job security based on document which was not distributed to him or her). In *House,* the court specifically found that plaintiff had been terminated in accordance with the procedures set forth in the internal company memorandum. Although plaintiff here maintains that he was not terminated in accordance with the procedures set forth in the manual, he can not overcome the fact that he could not reasonably rely on a promise made in a manual he never saw.

■ Summary judgment, however, is not appropriate on plaintiff's claim of implied contract because plaintiff also claims an implied contract exists as a result of oral representations made on behalf of Navistar. In *Shebar v. Sanyo Business Systems Corp.,* 111 N.J. 276, 288, 544 A.2d 377 (1988), the New Jersey Supreme Court recognized that oral promises related to employment may be enforceable. *Id.* at 289, 544 A.2d 377. In *Shebar,* however, the oral promise was made to plaintiff only and did not constitute an oral promise of a company-wide policy. *Id.* at 284, 544 A.2d 377. The *Shebar* court specifically noted that it did not decide whether the principles of *Woolley* extended to a situation where a company orally communicated an established company-wide policy to its employees. *Id.* 111 N.J. at 288, 544 A.2d 377. Notably, the *Shebar* court did not preclude a finding of an implied contract based upon oral communications of company-wide policy.

Although the higher courts in New Jersey have not yet addressed the question of whether an implied contract could exist based upon oral communications of company-wide policy, the Supreme Court's precedents suggest that it would recognize an implied contract from an employer's oral representations of company policy.[2] The New Jersey Supreme Court has consistently announced its unwillingness to unquestionably defer to the interests of employers. *See Woolley,* 99 N.J. at 290, 491 A.2d 1257; *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 72, 417 A.2d 505 (1980). Recognizing that during the twentieth century, we have changed from a nation of small and medium-sized employers who were both owners and management to a nation of gigantic corporations in which ownership is separate from management, the New Jersey Supreme Court has moved away from the archaic and harsh rule that an employer could fire an at will employee for any reason or for no reason whatsoever. Rather, it examines the underlying interests of the employee, the employer, and

2. Even defendant's brief concedes that New Jersey law is the most solicitous toward employees' rights. *Defendant's Brief* at 19.

public policy to determine whether deference to one or the other served or disserved the needs of society as presently understood. *See Woolley*, 99 N.J. at 291, 491 A.2d 1257.

This court concludes that the New Jersey Supreme Court's rationale underlying its recognition of an implied contract from a written employee manual also supports the finding of an implied contract from oral communications from the employer. *Cf. Brunner v. Abex Corp.*, 661 F.Supp. 1351, 1356 (D.N.J.1986). Although specific oral representations may not be shrouded with the appearance of corporate legitimacy, as would a written policy manual, *see Woolley*, 99 N.J. at 299, 491 A.2d 1257, the employee may rely on representations from supervisors or other higher level employees as accurate statements of corporate policy. Here, plaintiff did not receive a policy manual to contradict the oral representations allegedly made to him. Neither did he have a written employment contract to define accurately the terms of his employment. Statements of Navistar's management regarding company policy could have had the appearance of corporate legitimacy because the statements were not contradicted. Thus, an employee may reasonably have relied on such statements.

■ In determining whether an oral contract exists, the court must consider whether the contract is sufficiently clear and capable of judicial enforcement.[3] *Shebar*, 111 N.J. at 290, 544 A.2d 377. Plaintiff's claim that Navistar orally represented to him that he would be treated as other senior employees were treated, that is, according to company policy, is not so vague and indefinite that it cannot be enforced. The legitimacy of the representations and the reasonableness of the employee's reliance are questions for the finder of fact that are not appropriate for summary judgment. This court will, therefore, deny defendants' motion for summary judgment on the implied contract claim.

### F. Implied Covenant of Good Faith

■ Defendants argue that, under New Jersey law, courts have not invoked the implied covenant of good faith and fair dealing to restrict the authority of employers to fire at will employees. New Jersey law does not recognize an implied covenant of good faith in employment contracts. *See House v. Carter–Wallace*, 232 N.J.Super. 42, 55, 556 A.2d 353, 360 (App.Div. 1989); *Citizens State Bank v. Libertelli*, 215 N.J.Super. 190, 521 A.2d 867 (App.Div. 1987). Defendants' motion for summary judgment on plaintiff's claim for breach of an implied covenant of good faith will be granted.

### G. Malicious Interference with Contractual Rights

■ Defendants also maintain that plaintiff has not alleged malice as required for claims of malicious interference with contractual rights and prospective economic advantage. Plaintiffs argue that malice, or the motive of the defendants, is a question of fact that precludes summary judgment. To succeed on a claim of malicious interference with a business or contractual right, plaintiff must show: (1) actual interference by the defendant; and (2) the malicious nature of the interference. *Raymond v. Cregar*, 38 N.J. 472, 479–80, 185 A.2d 856 (1962). The interference alleged must be both intentional and legally or ethically improper. *Raul International Corp. v. Sealed Power Corp.*, 586 F.Supp. 349, 358 (D.N.J.1984).

■ "Malice", as used in a tort claim of malicious interference, constitutes the intentional doing of a wrongful act without justification or excuse. *Rainier's Dairies v. Raritan Valley Farms Inc.*, 19 N.J. 552,

---

**3.** The higher evidentiary standard of clear and unequivocal expression of the contract term would apply if the promise made was unusual or contrary to the employer's standard procedure. *Savarese v. Pyrene Mfg. Co.*, 9 N.J. 595, 601, 89 A.2d 237 (1952). When the oral representation purports to communicate company policy, however, the promise could not be unusual or contrary to the employer's standard procedure. Here, plaintiff claims that the oral contract provided only that he would be treated as other senior employees were treated, that is, in compliance with company policy.

563, 117 A.2d 889 (1955). *See also Raymond v. Cregar*, 38 N.J. at 480, 185 A.2d 856; *Association Group Life, Inc. v. Catholic War Veterans*, 120 N.J.Super. 85, 98, 293 A.2d 408 (App.Div.1971) ("Tort liability for interference with prospective economic benefit arises when the conduct of the defendant is not in the reasonable exercise of an equal or superior right"), *modified*, 61 N.J. 150, 293 A.2d 382 (1972); *Levin v. Kuhn Loeb & Co.*, 174 N.J.Super. 560, 573, 417 A.2d 79 (1980); *O'Connor v. Harms*, 111 N.J.Super. 22, 266 A.2d 605 (App.Div. 1970); *Kurtz v. Oremland*, 33 N.J.Super. 443, 111 A.2d 100 (Ch.1955); *Glasofer Motors v. Osterlund, Inc.*, 180 N.J.Super. 6, 26, 433 A.2d 780 (App.Div.1981) ("A sine qua non of interference with contractual relations or prospective economic advantage is that the interference be unreasonable").

■ In determining whether the interference by the defendant was malicious, the jury must determine that the defendant's conduct was "both injurious and transgressive of generally accepted standards of common morality or of law." *Association Group Life, Inc. v. Catholic War Veterans*, 120 N.J.Super. at 98, 293 A.2d 408; *Inventive Music Ltd. v. Cohen*, 617 F.2d 29, 34 (3d Cir.1980); *Leslie Blau Co. v. Alfieri*, 157 N.J.Super. 173, 189, 384 A.2d 859 (App.Div.1978) ("i.e., violation of standards of 'socially acceptable conduct'").

■ Viewing the facts in the light most favorable to the nonmoving party, plaintiff has alleged sufficient facts to permit an inference of malice by defendants. Plaintiff has alleged that defendant O'Dare arbitrarily denied his requests for additional accounts and, in fact, responded to plaintiff's requests by reducing the number of accounts assigned to plaintiff. Plaintiff also alleges that defendant O'Dare verbally attacked him in response to his letters requesting the raise that had been given to younger Fleet Executives. A jury could infer malice from this conduct. The court will deny defendants' motion for summary judgment on this claim.

## H. *Promissory Estoppel*

■ Defendants argue that plaintiff's claim of promissory estoppel with respect to defendants' denial of benefits of the Early Retirement Plan to plaintiff is preempted by ERISA. Further, defendants argue that plaintiff fails to state a claim under ERISA. Plaintiff maintains that his charge of discrimination does not require that the court interpret the provisions of the employee benefit plan and, therefore, is not preempted by ERISA.

Section 514(a) of the statute provides that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA's power to preempt state law has been construed very broadly, since "the breadth of § 514(a)'s preemptive reach is apparent from that section's language." *Id.* at 96, 103 S.Ct. at 2899–90. (citing *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981) (holding that Congress intended ERISA to establish exclusive federal role in regulating benefit plans, therefore, New Jersey state law in conflict therewith was preempted)). The congressional history shows that Congress's intent in enacting ERISA was to make its preemptive scope "as broad as its language." *Id.* 463 U.S. at 98, 103 S.Ct. at 2901. Statements by the bill's sponsors likewise stressed the breadth of ERISA's federal preemption power. *See id.* at 99, 103 S.Ct. at 2901.

ERISA's broad preemption is subject to a number of enumerated exceptions listed in the Act. *See, e.g.* ERISA § 514(b), 29 U.S.C. § 1144(b). Specifically, section 514(d) of ERISA provides that "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." *Id.* State law that, if preempted, would impair a similar federal law is, therefore, not preempted under this saving clause.

Plaintiff's complaint states:

2. Defendant corporation had a long time practice of treating senior employees in an equitable manner.

3. Indicia of said practice, was defendant corporation's Early Retirement Program instituted at time of Reduction in Force.

4. Said Early Retirement Program did provide for special benefits for older and more senior employees.

5. Defendant did or should have reasonably expected that plaintiff would rely upon defendant's aforesaid practices and programs.

 Plaintiff relied on defendant's practice of taking care of its senior employees to his detriment by remaining with the company for 33 years.

 Defendant, through officers, agents and employees, encouraged plaintiff to retire on several occasions.

 Defendant Corporation, however, denied the benefits of the Early Retirement Plan to this plaintiff.

 Defendant is estopped from denying plaintiff the benefits of the retirement plan and/or any modification thereof made available to other employees at time of plaintiff's forced retirement.

Complaint at 9–10. Plaintiff essentially claims that he was improperly denied benefits from Navistar's early retirement benefits program and that defendant's conduct caused him to rely to his detriment that such benefits would be forthcoming. Plaintiff's promissory estoppel claim is preempted by ERISA. His claim relates to the employee benefit plan because he asserts he was improperly denied benefits. In fact, plaintiff requested relief that relates to the plan—plaintiff seeks to enjoin Navistar from denying him early retirement benefits. Because plaintiff's state law claim relates to an employee benefit plan, his claim is preempted by ERISA. *See Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 696 (6th Cir. 1989); *Degan v. Ford Motor Co.,* 869 F.2d 889, 894 (5th Cir.1989); *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.) *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1095 (9th Cir.1985); *Bakersky v. ITT Corp.,* Civil No. 89–3425XX(CSF), 1990 WL 33149 (D.N.J. Mar. 20, 1990) (available at 1990 U.S.Dist. LEXIS 3177). Cases holding that state law claims of promissory estoppel are not preempted by ERISA are distinguishable from the case at bar. *See Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116, 120 (4th Cir.1989) (complaint did not bring into question whether plaintiff eligible for employee benefit plan); *Perry v. P\*I\*E Nationwide, Inc.,* 872 F.2d 157, 162 (6th Cir.1989) (complaint claimed promissory estoppel for defendant's inducing plaintiffs to join employee benefit plan). Plaintiff's contention that the court would not have to interpret the plan is unavailing. First, plaintiff cites no authority for this legal argument. Second, the court must interpret the provisions of the plan to determine whether Navistar improperly denied plaintiff benefits to which he was entitled.

 Additionally, plaintiff fails to state a cause of action under ERISA. The complaint does not set forth facts by which the defendants could be liable to plaintiff under ERISA. This count will be dismissed in its entirety.

I. *Misrepresentation*

 Additionally, defendants maintain that any claim of misrepresentation is subsumed under plaintiff's implied contract claim under New Jersey law. To state a prima facie case of fraudulent misrepresentation under New Jersey law, plaintiff must show a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his or her detriment. *Jewish Center of Sussex County v. Whale,* 86 N.J. 619, 624, 432 A.2d 521 (1981) (elements of scienter required to show misrepresentation for tort action for damages). Plaintiff must show proof of actual detriment susceptible to a jury's or other fact finder's evaluation in compensatory damages. *Nappe v. Ansche-*

*lewitz, Barr, Ansell & Bonello,* 189 N.J. Super. 347, 355, 460 A.2d 161, 164 (App. Div.1983) *Modified,* 97 N.J. 37, 477 A.2d 1224 (1984). Additionally, plaintiff's reliance on the representation must be justifiable, for example, when facts to the contrary were not obvious or did not provide a warning, or where plaintiff did not reasonably pursue further investigation that would have revealed the falsity of the representation. *Id.*

 Defendants cite no authority that holds that misrepresentation claims are reserved for incidents arising outside the employer-employee context. This court's own research has not revealed any such limitation. Summary judgment on plaintiff's claim of misrepresentation will be denied.

### J. *Jurisdictional Arguments*

Finally, defendants maintain that, if plaintiff's ADEA claims are dismissed, this court cannot maintain jurisdiction ·over plaintiff's state law claims. *See United Mine Workers v. Gibb,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Lovell Manufacturing v. Export–Import Bank,* 843 F.2d 725 (3d Cir.1987). Because plaintiff's ADEA claims will not be dismissed, this argument is moot.

 Defendants argue that, even if the ADEA claims are not dismissed, matters of comity suggest that this court should refuse to entertain plaintiff's pendant claims because plaintiff is a Pennsylvania resident. This argument is rejected because the claims all arise out of the same nucleus of fact and the case would be tried piecemeal if the state claims are dismissed.

 In the alternative, defendants note that if plaintiff's claims are not dismissed, plaintiff has still not complied with the requirements of the ADEA, 29 U.S.C. § 633(b), which requires that plaintiff first bring suit under the NJLAD in the New Jersey Division of Civil Rights. At oral argument, plaintiff's counsel submitted an EEOC form that transferred the action from the EEOC to the New Jersey Division on Civil Rights. The form is dated December 9, 1986. The form is sufficient evidence that plaintiff complied with the requirements of the ADEA, therefore, this court will not dismiss the action.

### III. CONCLUSION

This court will dismiss plaintiff's causes of action of defamation as barred by the statute of limitations. Likewise, plaintiff's claim of emotional distress and physical injury will be dismissed. Inasmuch as an implied covenant of good faith is not recognized in employment contracts under New Jersey law, the court will dismiss Count III of the complaint. Additionally, plaintiff's claim of promissory estoppel with regard to Navistar's Early Retirement Plan is preempted by ERISA, thus, Count V will be dismissed.

Summary judgment, however, is not appropriate on plaintiff's ADEA, NJLAD, implied contract, malicious interference, and misrepresentation claims. Defendants' motion for summary judgment on these claims will be denied.

An appropriate order will be entered.

### ORDER

This matter having come before the court on the motion of defendants Navistar International Transportation Corp. and James T. O'Dare for summary judgment; and

For the reasons stated in this court's opinion of this date;

IT IS on this 6th day of April, 1990 hereby

ORDERED that defendants' motion for summary judgment is GRANTED IN PART and Count Three, alleging breach of an implied covenant of good faith, and Count Five, alleging a cause of action for promissory estoppel, of the complaint are DISMISSED WITH PREJUDICE as to all defendants.

IT IS FURTHER ORDERED that, to the extent the complaint raises a claim for defamation, emotional distress, and physical injury, defendants' motion for summary judgment on such claims is GRANTED and they are DISMISSED WITH PREJUDICE as to all defendants.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is DENIED IN PART with respect to Counts One, Two, Four, and Six.

No costs.